**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St., #80594
San Francisco, CA 94104
Telephone:  (415) 488-8041
Facsimile:   (415) 651-9700
*Attorneys for Plaintiff*,
Joseph Nuccitelli

# UNITED STATES DISTRICT COURT
## FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSEPH NUCCITELLI,**<br><br>Plaintiff,<br><br>v.<br><br>**LOS ROBLES REGIONAL MEDICAL CENTER AND MEDICREDIT, INC.,**<br><br>Defendants. | **Case No.:** 2:22-cv-00337<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1.) **FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692 ET SEQ.; AND**<br><br>2.) **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL CIV §§ 1788, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

///

///

///

///

**COMPLAINT FOR DAMAGES**

## INTRODUCTION

1. This is a case about a medical center and its debt collector who have repeatedly attempted to collect a debt from a consumer that they know the consumer does not owe.

2. **JOSEPH NUCCITELLI** (hereinafter "Plaintiff"), by his attorney, brings this action for actual damages, statutory damages, attorneys fees, and costs, against **LOS ROBLES REGIONAL MEDICAL CENTER** (hereinafter "Defendant LRRMC") **and MEDICREDIT, INC.** (hereinafter "Defendant Medicredit") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788 et seq. (hereinafter "RFDCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive and unfair practices.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of those Defendants named.

## JURISDICTION AND VENUE

7. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," 28 U.S.C. § 1331,

which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

8. This action arises out of Defendants' violations of the FDCPA, and the RFDCPA.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## FDCPA AND RFDCPA

10. In enacting the FDCPA, Congress found that:
    a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
    b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
    c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
    d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
    e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses. 15 U.S.C. § 1692.

///

11. Similarly, when enacting the RFDCPA, the California Legislature found that:

> The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civ. Code § 1788.1(a)(1).

12. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

13. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

### PARTIES

14. Plaintiff is a natural person who resides in Los Angeles County, California. Plaintiff is "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and "Debtor" as that term is defined by Cal. Civ. Code § 1788.2(h). Plaintiff is a

///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

"disabled person" as that term is defined in subdivisions (f) and (g) of Cal. Civ. Code § 1761.

15. Defendant Los Robles Regional Medical Center is a Tennessee corporation operating from an address of One Park Plaza, Nashville, TN 37203, and is a "Debt Collector" as that term is defined by Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts. It operates a California business and attempts to collect debts from consumers in the State of California. One of its primary business purposes is the collection of defaulted consumer debts, and, in fact was acting as a debt collector as to the consumer debt it attempted to collect from Plaintiff.

16. Defendant Medicredit, Inc. is a Tennessee corporation operating from an address of One Park Plaza, Nashville, TN 37203, and is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of California. Its principal, if not sole, business purpose is the collection of defaulted consumer debts originated by others, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

17. This case involves money due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

18. Defendants allege that Plaintiff owed them money that it was allegedly collecting for a debt arising out of medical services performed upon Plaintiff by Defendant LRRMC for treatment of injuries arising out of an industrial work-

place accident, without payment being required at the time of services being rendered, and Plaintiff is informed and believes that the money alleged to be owed to Defendants originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d), a "consumer credit transaction" as that term is defined by Cal. Civ. Code § 1788.2(e), and a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f).

19. Plaintiff is informed and believes, and thereon allege that at all times herein mentioned Named Defendants were agents, officers, directors, managing agents, employee and/or joint venturer of each of their co-defendants and, in doing the things hereafter mentioned, each was acting in the scope of his authority as such agent, officer, director, managing agent, employee, and/or joint venturer, and with the permission, knowledge, ratification, and consent of their co-defendants, and each of them. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

## FACTUAL ALLEGATIONS

20. Plaintiff is an individual residing in Los Angeles County, California.
21. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted and continue to conduct business in the State of California.
22. Defendant Medicredit's business consists solely of the acquisition and collection of delinquent consumer debts.
23. On or around March 6, 2019, Plaintiff suffered injuries as a direct result of his employment with the CA Highway Patrol.
24. Plaintiff continues to suffer from his injuries, which have been deemed to be a permanent disability. Plaintiff continues to receive treatment for these issues.

///

25. Plaintiff is still taking various medications for the on-going injuries and continues to seek treatment.

26. Since March 2019, Plaintiff has maintained an on-going claim with the California Workers' Compensation Board in California Workers' Compensation case number ADJ12144517.

27. On October 18, 2019, Plaintiff received a letter from the State Compensation Insurance Fund indicating that Plaintiff's claim, numbered 06439192, deemed Plaintiff's injury permanent and stationary, and resulted in permanent disability. This letter also stated Plaintiff was in need of future medical care.

28. California Labor Code § 3751(b) states "If an employee has filed a claim form pursuant to Section 5401, a provider of medical services shall not, with actual knowledge that a claim is pending, collect money directly from the employee for services to cure or relieve the effects of the injury for which the claim form was filed, unless the medical provider has received written notice that liability for the injury has been rejected by the employer and the medical provider has provided a copy of this notice to the employee."

29. California Labor Code § 4900 states, "No claim for compensation, except as provided in Section 96, is assignable before payment, but this provision does not affect the survival thereof."

30. Liability for the injury has not been rejected, and in fact Plaintiff is being paid disability benefits for the injuries.

31. In June 2021, Plaintiff received medical services from Defendant LRRMC for treatment of injuries that are the subject of his worker's compensation claim, of which Defendant LRRMC knew about and was aware that all billings for services should be handled pursuant to the Worker's Compensation Act.

32. When Plaintiff received this treatment from Defendant LRRMC, he specifically informed Defendant LRRMC that the treatment was for on-going injuries related to his worker's compensation claim.

33. Upon information and belief, the account history and the account file contain this information – that the services being rendered were for on-going injuries related to his worker's compensation claim.

34. Nevertheless, Defendant LRRMC began attempting to collect the debt at issue directly from Plaintiff by sending him multiple bills.

35. No letter has been provided to Defendant LRRMC informing Defendant LRRMC that liability has been rejected, which means Defendant LRRMC has been attempting to unlawfully collect the amounts directly from Plaintiff, in violation of Labor Code § 3751.

36. In response to Defendant LRRMC's multiple collection letters, Plaintiff's workers' compensation attorney – Kenneth W. Hannegan of the Law Offices of Kenneth W. Hannegan – sent letters dated July 29, 2021, August 24, 2021, and November 15, 2021, to Defendant LRRMC, at P.O. Box 290969, Nashville, TN 37229, which is the address listed on Defendant LRRMC's letterhead.

37. Mr. Hannegan's letters specifically informed Defendant LRRMC that he represents Plaintiff.

38. Mr. Hannegan's letters specifically informed Defendant LRRMC about the pending worker's compensation claim, provides the case number, provides the insurance carrier's contact information (who is responsible for payment of medical billings pertaining to Plaintiff's worker's compensation claims).

39. Mr. Hannegan's letters clearly informed Defendant LRRMC that the Wotker's Compensation Appeals Board (WCAB) has exclusive jurisdiction to hear and determine claims petaining to an asserter's worker's compensation claim, and cites to the California Labor Code § 3751(b).

40. Mr. Hannegan's letters clearly state that Defendant LRRMC is not to contact Plaintiff any further regarding payment of the debt, and that instead Defendant LRRMC is to send all bills to the State Compensation Insurance Fund for review and reimbursement.

41. Mr. Hannegan's letters also clearly state that use of any collection type agency to contact Plaintiff regarding payment of the debt would be improper, and the only way to ensure payment is to file a Notice and Request for Allowance of Lien with the WCAB pending its determination.

42. At all times relevant, an aggrieved creditors' remedy – if the WCAB's decision is unsatisfactory – is a petition for reconsideration pursuant to California Labor Code § 5900, and appeallate review pursuant to California Labor Code § 5950.

43. Plaintiff has never received written notice from Defendants that liability upon the claim has been rejected.

44. After Mr. Hannegan delivered the July 29, 2021, August 24, 2021, and November 15, 2021, letters to Defendant LRRMC, Defendant LRRMC continued to send Plaintiff letters and bills demanding payment in full from Plaintiff directly.

45. Defendant LRRMC sent letters and bills directly to Plaintiff dated August 2, 2021, and November 1, 2021. Each letter demands payment from Plaintiff in the amount of $653.40.

    a. The November 1, 2021, letter states that Defendant LRRMC is referring collection of the account to a debt collector immediately, and states that Plaintiff is obligated to pay $653.40 for the hospital services received.

46. Defendant Medicredit sent a bill to Plaintiff dated November 9, 2021, demanding payment in the amount of $653.40 from Plaintiff for the hospital services provided by Defendant LRRMC.

47. Defendants' numerous collection letters sent directly to Plaintiff have confused Plaintiff as to whether he was going to be subjected to more debt collection activity even though the debt had been submitted as part of is worker's compensation claim. The worker's compensation claim was supposed to have protected Plaintiff, by insulating him from being individually responsible for payment of medical service debts related to his work-related injury.

48. Despite Defendants' actual knowledge of the Mr. Hannegan's representation of Plaintiff, and despite Defendants' actual knowledge of the worker's compensation claim, Defendants have continued to send multiple bills and collection letters directly to Plaintiff, claiming that Plaintiff personally owes the debt.

49. Defendants have not acknowledged Plaintiff's pending worker's compensation claim, or any of Mr. Hannegan's letters to Defendant LRRMC.

## ACTUAL DAMAGES

50. As a direct result of Defendants' unfair, oppressive, and abusive conduct in connection with its debt collection activity explained above, Plaintiff has suffered actual damages as a result of these illegal collection and intimidation tactics by these Defendants in the form of invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions. Plaintiff has experienced these things because Defendants have continued to attempt to collect this debt directly from Plaintiff despite Mr. Hannegan having notified Defendants on numerous occasions of the proper way to get paid for this debt – sending the bills to the state insurance compensation fund, and submitting lien paperwork to WCAB. This has caused Plaintiff to question whether the worker's compensation board process actually provides him with the legal protections it is supposed to.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF § 1692C OF THE FDCPA

### [AGAINST DEFENDANT MEDICREDIT]

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. A debt collector violates § 1692c(a)(2) of the FDCPA when it, communicates with a consumer when it knows that the consumer is represented by an attorney.
53. Defendant Medicredit violated § 1692c(a)(2) of the FDCPA when it continued to communicate directly with Plaintiff when it knew that Plaintiff was represented by Mr. Hannegan, an attorney.
54. A debt collector violates § 1692c(c) of the FDCPA when it, communicates with a consumer after the consumer notifies in writing that they refuse to pay or wish the debt collector to stop communicating.
55. Defendant Medicredit violated §1692c(c) of the FDCPA when it when it among other qualifying actions and omissions, willfully and without justification, communicated with Plaintiff after Plaintiff, via his attorney Mr. Hannegan, notified Defendants in writing, via USPS Certified Mail, that he refused to pay the debt, and that he wished Defendants would stop communicating with him.
    a. The violative communications by Defendant Medicredit were not to advise Plaintiff that further collection efforts were being terminated, were not to notify Plaintiff that Defendants may invoke specified remedies which are ordinarily invoked by Defendants and were not to notify Plaintiff that Defendants intended to invoke a specific remedy.

## COUNT II
## VIOLATION OF § 1692E OF THE FDCPA
### [AGAINST DEFENDANT MEDICREDIT]

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.
57. A debt collector violates § 1692e(2)(a) of the FDCPA when it falsely represents the character, amount, or legal status of a debt.
58. Defendant Medicredit violated § 1692e(2)(a) of the FDCPA when it falsely represented that Plaintiff was directly responsible for payment of the debt at issue

///

in this case, when legally the demands for payment should have been submitted to the State Compensation Insurance Fund and WCAB.

## COUNT III

### VIOLATION OF § 1692F OF THE FDCPA

### [AGAINST DEFENDANT MEDICREDIT]

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. A debt collector violates § 1692f(1) of the FDCPA when it attempts to collect any amount when the collection of such amount is not authorized by agreement or permitted by law.

61. Defendant Medicredit violated § 1692f(1) of the FDCPA when it attempted to collect the debt at issue in this case directly from Plaintiff, when legally the demands for payment should have been submitted to the State Compensation Insurance Fund and WCAB.

## COUNT IV

### VIOLATION OF § 1788.14(C) OF THE RFDCPA

### [AGAINST ALL DEFENDANTS]

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. A defendant violates § 1788.14(c) of the RFDCPA when it communicates with a debtor regarding a consumer debt when the collector has been previously notified in writing by the debtor's attorney that the debtor is represented by the attorney with respect to the debt, and that notification includes the attorney's contact information.

64. Defendants both violated § 1788.14(c) of the RFDCPA when they willfully continued to communicate with Plaintiff directly despite having been informed in writing that Mr. Hannegan represented Plaintiff with regard to the debt.

///

## COUNT V

## VIOLATION OF § 1788.17 OF THE RFDCPA

## [AGAINST ALL DEFENDANTS]

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. A defendant violates § 1788.17 of the RFDCPA when it fails to comply with the provisions of 15 U.S.C. § 1692b to 1692j, inclusive.

67. Defendants both violated § 1788.17 of the RFDCPA when they willfully engaged in conduct, the natural consequence of which the violation of 15 U.S.C. §§ 1692c, 1692e, and 1692f.

  a. A debt collector violates § 1692c(a)(2) of the FDCPA when it, communicates with a consumer when it knows that the consumer is represented by an attorney.

   i. Defendants violated § 1692c(a)(2) of the FDCPA when they continued to communicate directly with Plaintiff when they knew that Plaintiff was represented by Mr. Hannegan, an attorney.

  b. A debt collector violates § 1692c(c) of the FDCPA when it, communicates with a consumer after the consumer notifies in writing that they refuse to pay or wish the debt collector to stop communicating.

   i. Defendants violated § 1692c(c) of the FDCPA when they, among other qualifying actions and omissions, willfully and without justification, communicated with Plaintiff after Plaintiff, via his attorney Mr. Hannegan, notified Defendants in writing, via USPS Certified Mail, that he refused to pay the debt, and that he wished Defendants would stop communicating with him.

   ii. The violative communications by Defendants were not to advise Plaintiff that further collection efforts were being terminated, were not to notify Plaintiff that Defendants may invoke specified

      remedies which are ordinarily invoked by Defendants and were not to notify Plaintiff that Defendants intended to invoke a specific remedy.

c. A debt collector violates § 1692e(2)(a) of the FDCPA when it falsely represents the character, amount, or legal status of a debt.

    i. Defendants violated § 1692e(2)(a) of the FDCPA when they falsely represented that Plaintiff was directly responsible for payment of the debt at issue in this case, when legally the demands for payment should have been submitted to the State Compensation Insurance Fund and WCAB.

d. A debt collector violates § 1692f(1) of the FDCPA when it attempts to collect any amount when the collection of such amount is not authorized by agreement or permitted by law.

    i. Defendants violated § 1692f(1) of the FDCPA when they attempted to collect the debt at issue in this case directly from Plaintiff, when legally the demands for payment should have been submitted to the State Compensation Insurance Fund and WCAB.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

a) Award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for Plaintiff, and,

b) Award of statutory damages in the amount of $1000.00 pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against each Defendant and for Plaintiff, and,

///

    c) Award of statutory damages in the amount of $1000.00 pursuant to Cal. Civ. Code § 1788.30 (RFDCPA) against each Defendant and for Plaintiff, and,

    d) Award of Treble damages pursuant to Cal Civ §3345, and

    e) Award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), against each Defendant and for Plaintiff, and,

    f) Award to Plaintiff of such other and further relief as may be just and proper.

### TRIAL BY JURY IS DEMANDED

68. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**THE CARDOZA LAW CORPORATION**

DATED: January 15, 2022

BY: /s/ MICHAEL F. CARDOZA
LAUREN B. VEGGIAN, ESQ.
MICHAEL F. CARDOZA, ESQ.
ATTORNEYS FOR PLAINTIFF,
JOSEPH NUCCITELLI

**ELECTRONICALLY STORED INFORMATION REQUEST**

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.